SHERIFF DALE SCHMIDT,
In his individual capacity,
124 West St.,
Juneau, Wisconsin, 53029

                     Plaintiff,              CASE NO:    26-CV-611

v.

SUNDAS NAQVI
10033 Frontage Road,
Unit F,
Skokie, Illinois 60088,

KEVIN MORRISON,
728 Easton Lane
Elk Grove Village, Illinois 60007,

SARAH AFZAL
2449 W. Fargo Ave.,
FL 1
Chicago, IL 60645


and

JOHN DOES 1-10,

                     Defendants.

---

**AMENDED COMPLAINT**

---

NOW COMES the Plaintiff, Sheriff Dale Schmidt in his individual capacity, by and

through his attorneys, Crivello, Nichols, & Hall, S.C., and as for a cause of action, states as follows:

1

## THE PARTIES

1.      Plaintiff, Sheriff Dale Schmidt, is an adult resident of the State of Wisconsin, and is the elected sheriff of Dodge County, Wisconsin with a principal place of business at 124 West St., Juneau, Wisconsin, 53029.

2.      Defendant, Sundas Naqvi, is an adult resident of the State of Illinois, with an address 10033 Frontage Road, Unit F, Skokie, Illinois 60088.

3.      Defendant, Kevin Morrison, is an adult resident of the State of Illinois, with an address of 728 Easton Lane, Elk Grove Village, Illinois 60007 and he is a Cook County Commissioner and previous candidate for the United States House of Representatives.

4.      Defendant, Sarah Afzal, is an adult resident of the State of Illinois, with an address of 2449 F. Fargo Ave., FL 1, Chicago, IL 60645.

5.      John Does 1-10 are individuals who reside outside of the State of Wisconsin and whose identities are presently unknown, but who participated in the publication or republication of defamatory statements, and whose true names will be substituted when discovered.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this case by virtue of the provisions of 28 U.S.C. § 1332 because Plaintiff is a citizen of Wisconsin and Defendants are citizens of Illinois, and the amount in controversy is in excess of $1,000,000.00 against each Defendant.

7.      The Eastern District of Wisconsin is an appropriate venue pursuant to 28 U.S.C § 1391(b) because a substantial part of the events giving rise to the claim occurred in this district and the reputational injury to Plaintiff occurred in this district.

## FACTUAL BACKGROUND

### Timeline of Defendant Naqvi's Whereabouts

8. On or about March 5, 2026, security footage from O'Hare International Airport ("O'Hare") shows Defendant Naqvi entering a secondary inspection area at 10:46 a.m. and leaving the secondary inspection area to a public area at 11:42 a.m.

9. On or about March 5, 2026, at approximately 1:17 p.m. Naqvi checked into the Hampton Inn & Suites located at 9480 W. Higgons Road, Rosemont, Illinois 60018.

10. On or about March 8, 2026, at approximately 1:32 p.m. Naqvi checked out of the Hampton Inn & Suites.

11. Upon information and belief, during the late evening of March 6, 2026, and early morning hours of March 7, 2026, Defendant Naqvi arranged for transportation from the Hampton Inn & Suites near O'Hare to Wisconsin.

12. On or around March 7, 2026, at approximately 4:12 a.m. Defendant Naqvi was seen leaving the lobby of the Hampton Inn & Suites and getting into a vehicle.

13. On or around March 7, 2026, at approximately 5:38 a.m., Defendant Naqvi was seen at a gas station in Slinger, Wisconsin.

14. Upon information and belief, Naqvi was dropped off near Holiday Inn Hotel in Beaver Dam, Wisconsin by the vehicle that picked her up from the Hampton Inn & Suites and is seen on video walking through the parking lot and into the hotel at approximately 6:35 a.m. on March 7, 2026.

15. Based on Naqvi's phone records, between March 5, 2026, and March 8, 2026, including the timeframe she claims to have been detained at the Dodge County Jail, there are continuous outgoing and incoming telephone calls and text messages to and from Naqvi's phone.

16. Dodge County Jail is a detention facility for Immigration and Customs Enforcement.

17. Naqvi was never booked or detained at the Dodge County Jail.

18. Dodge County Jail logs show no female inmates or detainees from the federal government were admitted or released during the timeframe in which these events were alleged to have occurred.

**Defendant Naqvi's Allegations**

19. On or about March 5, 2026, Defendant Naqvi alleges she arrived at O'Hare International Airport ("O'Hare") on a flight from Istanbul, Turkey.

20. Despite the real facts described above, Naqvi publicly claimed that upon her arrival at O'Hare on March 5, 2026, she was taken into custody and detained at O'Hare International Airport for approximately 30 hours.

21. Despite the real facts described above, Naqvi publicly claimed that after being detained for 30 hours at O'Hare she was transported from O'Hare to an Immigration and Customs Enforcement (ICE) facility in Broadview, Illinois.

22. Despite the real facts described above, Naqvi publicly claimed that she was transported across state lines to Wisconsin where she claimed to have been held at the Dodge County Jail.

4

23. Naqvi claims Dodge County Sheriff's Office subsequently released her from the facility on March 7, 2026.

**Communications With and Statements Made by Defendant Morrison**

24. Based on Naqvi's phone records, on or about March 6, 2026, at approximately 12:55 p.m., Cook County Commissioner Kevin Morrison, then a candidate for the United States Congress, called Naqvi and the call was answered.

25. On or about March 6, 2026, at approximately 11:32 p.m., Morrison stated in a video, which was filmed outside the Broadview ICE Facility, that he was in communication with Naqvi until 3:52 p.m. when her phone pinged from the ICE detention center in Broadview.

26. On or about March 6, 2026, after 3:52 p.m., Defendant Morrison made three separate phone calls to Naqvi, which based on Naqvi phone records, were shown to be picked up.

27. Despite Defendant Morrison indicating that he lost contact with Naqvi subsequent to 3:52 p.m. on March 6, 2026, based on Naqvi's phone records, Defendant Morrison also called Naqvi at 2:14 a.m. on March 7, 2026, and the record establishes that the call was picked up.

28. On or about March 8, 2026, Defendant Morrison stated during a press conference that Naqvi and five other individuals were transported from Illinois to Wisconsin by immigration agents; however, the Defendant Morrison actually had repeated calls with Naqvi during the time period that he asserted she was in custody.

29. During his press conference, Commissioner Morrison made allegations of an illegal detention of a U.S. citizen by government officials, including Sheriff Schmidt.

30. Commissioner Morrison made allegations of a "cover up" by the Dodge County Sheriff's Office that is the responsibility of Sheriff Schmidt.

5

31. For example, on March 9, 2026, upon information and belief at the direction of Naqvi, Commissioner Morrison made the following statements to WISN 12 News directed at Sheriff Schmidt: "[t]hey have been lying from the very start of this. I don't think they want to own up to the fact that, once again, they have illegally detained American citizen without due process."

32. On March 9, 2026, Commissioner Morrison further publicly reported that after Naqvi was allegedly released from the Dodge County Jail, Naqvi "walked to a nearby gas station and hitchhiked to a Holiday Inn, several miles away from the detention facility for refuge before her sister was able to get to her."

33. Many of the statements made by Commissioner Morrison were also disseminated through Commissioner Morrison's social media channels, which were widely shared:



34.     Upon information and belief, the categorically false allegations made by Commissioner Morrison were based on malice and designed to generate outrage and media attention in order to harm the reputation of Sheriff Dale Schmidt.

35.     Commissioner Morrison attributed the accusation to Naqvi or otherwise repeated the substance of Naqvi's false allegations.

36.     On or about February 20, 2026, the Chicago Sun-Times, published a questionnaire in which Defendant Morrison stated that immigration enforcement operations represented "one of the most staggering violations of core constitutional principles" he had witnessed and advocated for significant restrictions on ICE enforcement activities.

37.     Upon information and belief, Defendant Morrison held these views before, during and after the events alleged in this complaint, and such views provided a malicious motive to accept, promote, and republish allegations of unlawful conduct by ICE and the Dodge County Sheriff's Office without adequately investigating whether those allegations were true.

38.     Upon information and belief, Defendant Morrison's preexisting hostility toward ICE detention operations and his political opposition to such operations contributed to his reckless disregard for the truth or falsity of the allegations he publicly disseminated concerning Sheriff Schmidt and the Dodge County Sheriff's Office.

**Communications With and Statements Made By Defendant Afzal**

39.     Upon information and belief, Naqvi communicated the above accusations to Defendant Afzal on multiple occasions between March 5, 2026 and March 8, 2026.

7

40. Upon information and belief, Naqvi made telephone calls and electronic communications to Afzal concerning her alleged detention between March 5, 2026 and March 8, 2026.

41. Based on Naqvi's phone records, on March 5, 2026, at 2:47 p.m., Naqvi and Afzal had a telephone call lasting nearly five minutes.

42. Based on Naqvi's phone records, on March 6, 2026, between approximately 12:44 p.m. and 4:02 p.m., there were 69 text messages between Naqvi and Afzal.

43. Based on Naqvi's phone records, on March 6, 2026, at 9:00 p.m., calls were made to Naqvi from Afzal, and to Afzal from Naqvi.

44. Based on Naqvi's phone records, on March 7, 2026, between 3:09 a.m., and 6:35 a.m., there are 6 text messages and 3 phone calls between Naqvi and Afzal.

45. Upon information and belief, Naqvi intended that Afzal further disseminate the accusations.

46. Upon information and belief, Afzal repeated and republished Naqvi's accusations to the public at large, including Cook County Commissioner Kevin Morrison.

47. On or about March 8, 2026, Afzal spoke at a press conference and stated that Naqvi was detained by U.S. Customs and Border Patrol at O'Hare airport on March 5, 2026 for nearly 30 hours.

48. Defendant Afzal attributed the accusation to Naqvi or otherwise repeated the substance of Naqvi's false allegations.

**The Defamatory Statements**

49.     Defendants' statements were understood by listeners, viewers, and readers to refer directly to Sheriff Schmidt because he was the elected Sheriff of Dodge County and the ultimate official responsible for the operation of the Dodge County Jail.

50.     As a result of Defendants' actions, the false allegations made quickly became the subject of widespread news coverage.

51.     News reports detailing the allegations were published and disseminated throughout Wisconsin and Illinois media outlets, as well as nationally distributed news media.

52.     For example, on or about March 9, 2026, the allegations were reported by Fox News 11, a news organization with nationwide accessible online platforms. (https://fox11online.com/news/local/sheriff-addresses-claims-about-us-citizens-immigration-detainment-at-dodge-county-jail-sundas-sunny-naqvi-skokie-illinois-chicago-sun-times-green-cards-chicago-ohare-international-airport-dale-schmidt-booked-sun-times).

53.     On or about March 10, 2026, the allegations were reported by WISN 12 News, a news organization within the Dodge County media market and also  nationwide accessible online platforms.(https://www.wisn.com/article/officials-dispute-illinois-womans-held-30-hours-airport-wisconsin-jail/70688683).

54.     On or about March 11, 2026, the allegations were reported by CBS Chicago, a news organization with nationwide accessible online platforms. (https://www.cbsnews.com/chicago/news/dhs-sheriffs-departments-deny-skokie-womans-claims-held-at-ohare/).

55. On or about March 12, 2026, the allegations were reported by WSAW-TV, a Wisconsin media outlet with nationwide accessible online platforms. (https://www.wsaw.com/2026/03/13/dhs-dodge-county-sheriff-employer-refute-claims-us-citizen-detained-ohare/).

56. In addition to the widespread news coverage, Naqvi's, Afzal's and Commissioner Morrison's allegations have similarly been published and disseminated through various social media platforms such as Instagram, Facebook and X.

57. The accusations conveyed that Plaintiff and/or Plaintiff's Sheriff's Office engaged in unlawful conduct.

58. The statements made by Defendants were demonstrably false statements of fact, not opinions, and are capable of being proven false.

59. The statements made by Defendants caused reputational harm and damages to Sheriff Dale Schmidt, particularly as he prepares for a re-election campaign in 2026.

**FIRST CAUSE OF ACTION:**
**DEFAMATION AGAINST SUNDAS NAQVI**

60. Sheriff Schmidt incorporates by reference all previously alleged paragraphs as if fully set forth herein.

61. The statements made by Defendant Naqvi, regarding her alleged detention at Dodge County Jail were and are false.

62. The statements made by Defendant Naqvi regarding her alleged detention at Dodge County Jail were communicated by speech, conduct, or in writing to third parties and constitute a publication.

10

63. Defendant Naqvi's defamatory statements were unprivileged and irreparably harmed Sheriff Schmidt's reputation as to lower him in the estimation of the Dodge County community.

64. Defendant Naqvi knew the accusations were false or acted with a reckless disregard for the truth.

65. Defendant Naqvi knew she was not detained at Dodge County Jail because she was physically present at other locations, such as the Hampton Inn & Suites and gas station during the period she claimed to be detained.

66. Defendant Naqvi's defamatory statements tend to deter third persons from associating or dealing with Sheriff Schmidt and have harmed his reputation as he seeks reelection to public office.

67. As a result of Defendant Naqvi's defamatory statements, Sheriff Schmidt was damaged.

## SECOND CAUSE OF ACTION:
## DEFAMATION AGAINST KEVIN MORRISON

68. Sheriff Schmidt incorporates by reference all previously alleged paragraphs as if fully set forth herein.

69. The statements made by Defendant Morrison, regarding Defendant Naqvi's alleged detention at Dodge County Jail were and are false.

70. The statements made by Defendant Morrison regarding Defendant Naqvi's alleged detention at Dodge County Jail were communicated by speech, conduct, or in writing to third parties and constitute a publication.

11

71. Defendant Morrison's defamatory statements were unprivileged and irreparably harmed Sheriff Schmidt's reputation as to lower him in the estimation of the Dodge County community.

72. Defendant Morrison knew the accusations were false or acted with reckless disregard for the truth, in part because he was in communication with Naqvi during the very hours that he publicly stated he lost contact with her and that he alleged she was in custody.

73. Defendant Morrison's defamatory statements tend to deter third persons from associating or dealing with Sheriff Schmidt and have harmed his reputation as he seeks reelection to public office.

74. As a result of Defendant Morrison's defamatory statements, Sheriff Schmidt was damaged.

**THIRD CAUSE OF ACTION**
**DEFAMATION AGAINST SARAH AFZAL**

75. Sheriff Schmidt incorporates by reference all previously alleged paragraphs as if fully set forth herein.

76. The statements made by Defendant Afzal, regarding Defendant Naqvi's alleged detention at Dodge County Jail were and are false.

77. The statements made by Defendant Afzal regarding Defendant Naqvi's alleged detention at Dodge County Jail were communicated by speech, conduct, or in writing to third parties and constitute a publication.

78. Defendant Afzal's defamatory statements were unprivileged and irreparably harmed Sheriff Schmidt's reputation as to lower him in the estimation of the Dodge County community.

12

79. Defendant Afzal knew the accusations were false or acted with reckless disregard for the truth.

80. Defendant Afzal's defamatory statements tend to deter third persons from associating or dealing with Sheriff Schmidt and have harmed his reputation as he seeks reelection to public office.

81. As a result of Defendant Afzal's defamatory statements, Sheriff Schmidt was damaged.

## FOURTH CAUSE OF ACTION
## CONSPIRACY AGAINST ALL DEFENDANTS

82. Sheriff Schmidt incorporates by reference all previously alleged paragraphs as if fully set forth herein.

83. Beginning on or before March 5, 2026, and continuing thereafter, Defendants Naqvi, Afzal, and Morrison knowingly reached an agreement, understanding, or common scheme to publish, republish, and disseminate false statements concerning Sheriff Schmidt and the Dodge County Sheriff's Office.

84. The purpose of the conspiracy was to promote and spread a false claim that Sheriff Schmidt unlawfully detained Defendant Naqvi, participated in an illegal detention of a United States citizen, engaged in misconduct and thereafter participated in a cover-up of such conduct.

85. In furtherance of the conspiracy, Defendant Naqvi communicated false accusations regarding her purported detention to Co-Defendants and others with the expectation and intent that such accusations would be further disseminated to the media and public.

13

86.    In furtherance of the conspiracy, Defendant Afzal repeated and republished the accusations to Defendant Morrison and others and publicly repeated such accusations during a press conference.

87.    In furtherance of the conspiracy, Defendant Morrison repeated, endorsed and republished the accusations through press conferences, social media posts, and other public statements.

88.    Upon information and belief, Defendants coordinated their communications, messaging and public statements concerning Sheriff Schmidt and Defendant Naqvi's alleged detention in order to maximize public exposure and cause reputational harm to Sheriff Schmidt.

89.    Each Defendant committed one or more overt acts in furtherance of the conspiracy, including making, republishing, and disseminating false and defamatory statements concerning Sheriff Schmidt.

90.    Defendants knew the accusations were false, or acted with reckless disregard as to their truth or falsity.

91.    As a direct and proximate result of the conspiracy, the defamatory statements were disseminated widely throughout, Wisconsin, Illinois, and nationally, causing substantial injury to Sheriff Schmidt's reputation, standing in the community, and damages relating to his candidacy for reelection.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Defendants as follows:

14

(a)     Actual and compensatory damages in excess of $1,000,000.00 against each Defendant, but in an amount to be determined at trial for Defendant's defamatory statements;

(b) Punitive damages;

(c) Injunctive relief;

(d) Attorneys fees, litigation expenses, and costs of suit; and

(e) Such other or further relief as the Court deems just and equitable.

### PLAINTIFF REQUESTS A JURY TRIAL

Dated this 27th day of July, 2026.

CRIVELLO, NICHOLS & HALL S.C.
Attorneys for Plaintiff, Sheriff Dale Schmidt
in his individual capacity

By: */s/ Samuel C. Hall, Jr.*
SAMUEL C. HALL, JR.
State Bar No.: 1045476
MAIA I. HENTGES
State Bar No.: 1138038
710 North Plankinton Avenue, Suite 500
Milwaukee, WI 53203
Phone: 414 271-7722
Fax:    414 271-4438
E-mail:shall@crivellolaw.com
        mhentges@crivellolaw.com

15