IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| SHERIFF DALE SCHMIDT,<br><br>Plaintiffs,<br><br>vs.<br><br>SUMMER SUNDAS NAQVI, et al.,<br><br>Defendants. | Case No. 26-CV-611 |

# DEFENDANT KEVIN MORRISON'S BRIEF SUPPORTING HIS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

## INTRODUCTION

This case is a sad example of a government official abusing the courts to punish critics for daring to speak out against governmental action. Although Sheriff Dale Schmidt of Dodge County, Wisconsin knows enough to base his claims against Defendant Kevin Morrison on two videos in which Morrison speaks, for some reason unexplained in the original or amended complaints Sheriff Schmidt chose to paraphrase Morrison's allegedly defamatory statements about him, rather than quoting the videos directly.

Small wonder: upon review of the videos that form the basis for Sheriff Schmidt's claim, it is obvious that Morrison never mentioned Sheriff Schmidt's name. That ends the possibility of a legally-viable defamation claim, because absent any reference to Sheriff Schmidt himself personally, he is trying to assert a claim for libel of government, which is anathema to the American constitutional system.

Sheriff Schmidt's claim also fails as a matter of law because he is a public official who must allege facts – not mere conclusions – establishing that Morrison uttered statements about him knowing they were false or with reckless disregard for their falsity. This he fails to do. The Court should dismiss this case with prejudice, because Sheriff Schmidt could never fix the flaws

in his amended complaint by further amendments.[1]

## ARGUMENT

### I. PLAINTIFF MUST ALLEGE FACTS THAT PLAUSIBLY ESTABLISH THE ESSENTIAL FACTUAL ELEMENTS OF HIS CLAIM.

Although the particularity requirements of Fed. R. Civ. P. 9 do not apply to defamation cases, that hardly means that a plaintiff can plead claims as factually threadbare as Sheriff Schmidt does here and get away with it. Instead, a complaint

> demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual adornment.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up), quoted in *Kubesh v. InGensa, Inc.*, Case No. 24-cv-202-wmc, 2024 WL 5106564 at *3 (W.D. Wis., Dec. 13, 2024). Instead, "the complaint must be sufficiently detailed 'to give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Kubesh*, 2024 WL 5106564 at *3, quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).

In defamation cases specifically, "[c]omplaints that merely provide vague and conclusory allegations are insufficient to state a claim for defamation; rather, the complaint must be sufficiently detailed to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Wesbrook v. Ulrich*, 90 F. Supp. 3d 803, 807 (W.D. Wis. 2015). The district court in *Wesbrook* dismissed claims as to two defendants because "the allegations are too vague and conclusory as to the actual content of the alleged defamatory statements." *Id*. at 808 (emphasis in original). As we shall see, plaintiff's claims must meet that identical fate.

A public official defamation plaintiff like Sheriff Schmidt[2] must also plead actual malice –

[1] Morrison adopts by reference and joins in the arguments for dismissal advanced by Defendant Sundas Naqvi in her motion to dismiss and supporting brief.

[2] Under the Wisconsin Constitution, sheriffs like Sheriff Schmidt are elected county officials. Wis. Const. Art. VI, Sec. 4. Accordingly, there is no serious question that Sheriff Schmidt is a "public official" subject to the actual

that is, knowledge that the alleged defamatory statement was false, or reckless disregard for its truth or falsity – in compliance with the requirements of *Twombly* and *Iqbal*. "States of mind may be pleaded generally, but a plaintiff must still point to details sufficient to render a claim plausible." *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013) (applying factual plausibility requirement to defamation plaintiff's allegations of actual malice). "A public-figure plaintiff must plead 'plausible grounds' to infer actual malice by alleging 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of' actual malice." *Fredin v. Klasfeld*, Case No. 24-cv-45-jdp, 2025 WL 977589 at *7 (W.D. Wis., Mar. 24, 2025), quoting *Biro v. Conde Nast*, 807 F.3d 541, 546 (2d Cir. 2015).

## II. THE COURT MAY CONSIDER THE ACTUAL ALLEGEDLY DEFAMATORY STATEMENTS SUPPOSEDLY MADE IN VIDEOS.

"Ordinarily, when adjudicating a motion to dismiss under Rule 12(b)(6), a district court is limited to the allegations in the complaint." *Financial Fiduciaries, LLC v. Gannett Co.*, 46 F.4th 654, 663 (7th Cir. 2022). However, there are exceptions, one of which is dispositive here.

> [A] court may consider documents that are (1) referenced in the plaintiff's complaint; (2) concededly authentic; and (3) central to the plaintiff's claim. . . . **This incorporation-by-reference doctrine prevents a plaintiff from avoiding dismissal by omitting facts or documents that undermine his case.**

*Id*. (Emphasis added.) "In a defamation case, where the published material is central to a plaintiff's allegations, courts routinely look outside the four corners of the complaint to view the entire publication." *Id*. at 664.

"[I]t makes 'eminently good sense' to apply these principles to video recordings attached to or referenced in a complaint, and we do so here." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir.

malice requirements of *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) and its progeny. After all, "virtually every jurisdiction to address the status of law enforcement officers has concluded that even rank-and-file police officers constitute 'public officials.'" *Wagner v. Allen Media Broadcasting*, 2024 WI App 9, ¶ 53, 410 Wis. 2d 666, 3 N.W.3d 758. A fortiori, elected sheriffs, with their policymaking authority, must likewise be held to the actual malice standard. *See also Miller v. Minority Broth. of Fire Prot.*, 158 Wis. 2d 589, 599, 463 N.W.2d 690 (Ct. App. 1990) (Milwaukee Fire Department captain held to be a "public official" for purposes of actual malice standard).

2013) (cleaned up). The Amended Complaint alleges three sources for Morrison's purportedly defamatory statements: a press conference (Am. Comp. ¶¶ 28-30); a news broadcast by WISN 12 News, a Milwaukee television station (id., ¶¶ 31-32); and Morrison's social media posts, three of which are reproduced in the pleading. (*Id.*, ¶ 33.)

Sheriff Schmidt obviously takes issue with the statements Morrison made at the press conference and to WISN-TV, and consistent with his obligations under Fed. R. Civ. P. 11 he must have watched both videos in order to determine that they contained defamatory statements. Perhaps his response brief will explain why he paraphrased those videos instead of quoting them directly. In any event, we urge the Court to watch both videos in their entirety.

The press conference is available on YouTube at this link: https://www.youtube.com/live/gXPdEWmXIyA . The video is approximately 42 minutes long, and contains statements by several individuals in addition to Morrison. It concludes with a question and answer session.

The WISN-TV broadcast is available at this link: https://www.wisn.com/article/officials-dispute-illinois-womans-held-30-hours-airport-wisconsin-jail/70688683 . This video is a little more than 2½ minutes long.

## III. AS A MATTER OF FEDERAL CONSTITUTIONAL LAW, MORRISON'S STATEMENTS ARE NOT "OF AND CONCERNING" SHERIFF SCHMIDT.

The first and most important lesson from reviewing the videos and the social media posts that comprise the entirety of the allegedly defamatory statements by Morrison: **none of them even mention Sheriff Schmidt by name.** Indeed, most of Morrison's criticism is directed at federal officials from ICE. How can those statements possibly have defamed Sheriff Schmidt personally?

The Amended Complaint provides an explanation, and in so doing seals its own doom. Sheriff Schmidt alleges that "Defendants' statements were understood by listeners, viewers, and

readers to refer directly to Sheriff Schmidt because he was the elected Sheriff of Dodge County and the ultimate official responsible for the operation of the Dodge County Jail." (Am. Comp. ¶ 49.) This is **not** an allegation of fact that must be taken as true; instead, it is a claim of a necessary legal inference, that Sheriff Schmidt embodies his office, so any statement about his office is also about him. In effect, Sheriff Schmidt contends "l'etat, c'est moi" – a more fundamentally un-American contention is hard to imagine.

Sheriff Schmidt apparently does not realize that other public-official defamation plaintiffs, like Police Commissioner L.B. Sullivan, tried this tactic long ago only to have it deemed wanting as a matter of federal constitutional law. Although the common law of Wisconsin requires that an allegedly defamatory statement be "of and concerning" the plaintiff, dismissal here is required based on the United States Supreme Court's decisions in *New York Times*, 376 U.S. at 289-292, and *Rosenblatt v. Baer*, 383 U.S. 75 (1966).

The facts of *New York Times* are strikingly similar to the facts on which Sheriff Schmidt relies on to tie Morrison's statements to his personal actions. As in Morrison's press conference, interview with WISN-TV, and social media posts, which nowhere refer to Sheriff Schmidt by name or governmental office, the allegedly offending advertisement in *New York Times* made no mention of plaintiff Police Commissioner L.B. Sullivan:

> There was no reference to respondent in the advertisement, either by name or by official position. A number of the allegedly libelous statements – the charges that the dining hall was padlocked and that Dr. King's home was bombed, his person assaulted, and a perjury prosecution instituted against him – did not even concern the police; despite the ingenuity of the arguments which would attach this significance to the word "they," it is plain that these statements could not reasonably be read as accusing respondent of personal involvement in the acts in question.

376 U.S. at 288-89. The Court then turned to the gist of Commissioner Sullivan's contention, reflected in the reasoning of the Supreme Court of Alabama in sustaining the verdict, that the statements must have been "of and concerning" him because by virtue of his official position, he

must have been involved in the actions. *Id*. at 289-291.

The Court rejected this contention with reasoning that rings true today; it deserves to be quoted in full:

> This proposition has disquieting implications for criticism of governmental conduct. For good reason, "no court of last resort in this country has ever held, or even suggested, that prosecutions for libel on government have any place in the American system of jurisprudence." . . . The present proposition would sidestep this obstacle by transmuting criticism of government, however impersonal it may seem on its face, into personal criticism, and hence potential libel, of the officials of whom the government is composed. There is no legal alchemy by which a State may thus create the cause of action that would otherwise be denied for a publication which, as respondent himself said of the advertisement, "reflects not only on me but on the other Commissioners and the community." **Raising as it does the possibility that a good-faith critic of government will be penalized for his criticism, the proposition relied on by the Alabama courts strikes at the very center of the constitutionally protected area of free expression. We hold that such a proposition may not constitutionally be utilized to establish that an otherwise impersonal attack on governmental operations was a libel of an official responsible for those operations.** Since it was relied on exclusively here, and there was no other evidence to connect the statements with respondent, the evidence was constitutionally insufficient to support a finding that the statements referred to respondent.

*Id*. at 291-293 (emphasis added). Sheriff Schmidt's claim cannot be distinguished from the failed claim of Commissioner Sullivan. Like Sullivan, he tries to convert an attack on government offices and agencies into a personal claim, but that effort is barred by the First Amendment here as surely as it was in *New York Times*.

And there is more: specifically, there is the Supreme Court's decision in *Rosenblatt*, 383 U.S. at 77-78, which involved a local columnist's raising provocative questions about a recreation area that had consistently lost money under previous officials, but had recently turned a significant profit. The column did not mention any of the former officials by name, yet the area's former supervisor sued for libel. *Id*. at 79-80.

Relying on *New York Times*, the Supreme Court rejected the plaintiff's effort to claim a libel based on a depersonalized criticism of government:

> The jury was permitted to award damages upon a finding merely that respondent

> was one of a small group acting for an organ of government, only some of whom were implicated, but all of whom were tinged with suspicion. In effect, this permitted the jury to find liability merely on the basis of his relationship to the government agency, the operations of which were the subject of discussion. . . . A theory that the column cast indiscriminate suspicion on the members of the group responsible for the conduct of this governmental operation is tantamount to a demand for recovery based on libel of government, and therefore is constitutionally insufficient.

*Id*. at 82-83. Sheriff Schmidt's complaint rests on the identical constitutionally-deficient inference, and it must also be rejected.

## IV. SHERIFF SCHMIDT FAILS TO PLAUSIBLY ALLEGE ACTUAL MALICE.

The Seventh Circuit's decision in *Pippen*, 734 F.3d at 614, prevents defamation plaintiffs from doing what Sheriff Schmidt does here: namely, fail to allege facts (as opposed to mere recitations of the definitions of actual malice) demonstrating that Morrison either knew that his statements were false or that he recklessly disregarded their truth or falsity. Sheriff Schmidt's complaint simply glosses over the fact that Morrison never uttered his name in either of the videos or any of the social media posts that form the basis for his claims. Without statements that satisfy the constitutional "of and concerning" requirement, it is a fool's endeavor to search for allegations that Morrison made any such statements with the requisite knowledge of falsity. This is why the allegations of Paragraph 72 cannot discharge Sheriff Schmidt's burden of pleading facts amounting to actual malice.

Actual malice, it must be emphasized, has a particular meaning in defamation law under the First Amendment. "Knowledge of falsity means that the defendant was actually aware that the contested publication was false. Reckless disregard for the truth or falsity of a publication occurs when the defendant in fact entertained serious doubts as to its truth . . . or a high degree of awareness of probable falsity." *Harris v. Quadracci*, 48 F.3d 247, 252 (7th Cir. 1995) (cleaned up). Likewise, "[c]ourts have made clear that actual malice does not mean bad intent, ill-will, or animus." *In re Storms v. Action Wisconsin Inc.*, 2008 WI 56, ¶ 66, 309 Wis. 2d 704, 750 N.W.2d

739.

Notwithstanding the Wisconsin Supreme Court's admonition about what actual malice is **not**, in a misguided effort to get over the threshold, the amended complaint repeatedly alleges ordinary malice – ill will toward immigration enforcement and ICE. (Am. Comp. ¶¶ 34, 37.) Sheriff Schmidt goes on to allege that "Defendant Morrison's preexisting hostility toward ICE detention operations and his political opposition to such operations contributed to his reckless disregard for the truth or falsity of the allegations he publicly disseminated concerning Sheriff Schmidt and the Dodge County Sheriff's Office." (*Id.* ¶ 38.) This is nothing more than ill will plus a recitation of the definition of actual malice, and therefore does not get Sheriff Schmidt closer to a plausible factual allegation sufficient to meet his burden of pleading the essential elements of a public official defamation claim.

Finally, Sheriff Schmidt alleges that Morrison failed to adequately investigate his allegations before speaking. (Am. Comp. ¶ 37.) This too is insufficient. A failure to investigate, even when a reasonably prudent person would have done so, does not establish reckless disregard. *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989). Sheriff Schmidt's failure to allege the essential element of actual malice provides a second, independent ground for dismissal of this action.

## V. THE CONSPIRACY CLAIM FAILS.

The conspiracy claim alleges as the unlawful act "an agreement, understanding, or common scheme to publish, republish, and disseminate false statements concerning Sheriff Schmidt and the Dodge County Sheriff's Office." (Am. Comp. ¶ 83.) Because Morrison made no statements whatsoever, false or otherwise, "concerning" Sheriff Schmidt, and because any statements cannot support a claim for defamation that meets the legal standards that a public official must satisfy, there is no conspiracy claim because there is no viable defamation claim.

In addition, Sheriff Schmidt's conspiracy allegations are precisely the kind of threadbare, conclusory assertions that cannot pass muster under Twombly and Iqbal. The allegations are bereft of facts establishing the alleged agreement, and the purported coordination between the defendants. All Sheriff Schmidt does is allege the elements of a common-law conspiracy claim and mix in the defendants' names. That is not sufficient.

**CONCLUSION**

For the reasons stated in this brief, this Court should dismiss the plaintiff's complaint against Kevin Morrison. Furthermore, because plaintiff has already amended once, and there is no reason to believe that more amendments would cure the fatal defects that require dismissal, this Court should dismiss with prejudice and on the merits.

Dated this 28th day of August, 2026.

LAFFEY, LEITNER & GOODE LLC
Counsel for Defendant Kevin Morrison

*/s/ Mark M. Leitner*

Mark M. Leitner
State Bar No. 10069459
John M. O'Shea
State Bar No. 1135345
325 E. Chicago Street
Suite 200
Milwaukee, WI 53202
(414) 312-7003 (telephone)
(414) 755-7089 (facsimile)
mleitner@llgmke.com
joshea@llgmke.com