IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| SHERIFF DALE SCHMIDT,<br><br>Plaintiffs,<br><br>vs.<br><br>SUMMER SUNDAS NAQVI, et al.,<br><br>Defendants. | Case No. 26-CV-611 |

# DEFENDANT KEVIN MORRISON'S REPLY BRIEF SUPPORTING HIS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

## INTRODUCTION

Plaintiff Dale Schmidt, the elected sheriff of Dodge County, provides nothing in his brief opposing the Defendants' motions to dismiss that allows his case to survive the application of the First Amendment. Because Sheriff Schmidt has already had one opportunity to amend his pleading, this Court should put a stop to his errant pursuit of Kevin Morrison by dismissing this case with prejudice and on its merits.

## ARGUMENT

### I. THE AMENDED COMPLAINT FAILS AS A MATTER OF LAW BECAUSE PLAINTIFF DOES NOT ALLEGE DEFAMATORY STATEMENTS MADE OF AND CONCERNING HIM, CONTRARY TO FEDERAL CONSTITUTIONAL REQUIREMENTS.

Plaintiff's arguments opposing Morrison's motion to dismiss are more interesting for what they leave out than for what they contain. First, although Plaintiff repeatedly cites the description of Morrison's allegedly defamatory statements from his Amended Complaint (Plf. Br. 5-7), Plaintiff nowhere acknowledges either of the videos – specifically referenced in the Amended Complaint, but deliberately omitted from that pleading and presented to this court only through the links on page 4 of Morrison's initial brief supporting this motion – that contain two

of the three sources of Morrison's allegedly defamatory statements. More important, nowhere does Plaintiff challenge Morrison's representations about the contents of those videos, meaning that Plaintiff concedes that Morrison accurately described their contents when he said (Def. Br. 4) that in neither the press conference video nor the WISN-TV video does Morrison mention Sheriff Schmidt by name.[1] *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (a party's silence about an opposing party's argument effectively concedes that argument). Thus, for purposes of evaluating Morrison's motion, this Court must assume that in none of the allegedly defamatory statements did Morrison identify Sheriff Schmidt by name.

Second, Plaintiff fails to understand that Morrison is not objecting to the Amended Complaint because it is too vague; rather, Morrison contends that the only statements sufficiently specific to support a defamation claim – namely, Morrison's statements in the videos and in the social media posts – cannot as a matter of law support a defamation claim, because absent a defamatory statement made against him personally, Sheriff Schmidt is effectively suing Morrison for criticizing the government, a result forbidden by the First Amendment.

Third, by ignoring the content of the videos and social media posts that contain all of the potentially defamatory statements that Morrison might possibly have made, Plaintiff also ignores the importance of the incorporation-by-reference doctrine that allows this Court to review the videos that form the basis for Plaintiff's case.[2] That doctrine is important precisely because it forbids the kinds of opportunistic arguments that Sheriff Schmidt offers against dismissal based on general legal principles requiring deference to allegations of fact. (See Pl. Br. 4, 7.) When a complaint's allegations are in fact based on materials that the plaintiff leaves out of his pleading,

[1] It is plain on the face of the three social media posts referenced in Plaintiff's Amended Complaint (at ¶ 33) that they, like the videos, never identify Sheriff Schmidt by name.

[2] As we point out above, Plaintiff waived the right to argue that Morrison's description of the videos in his initial brief is inaccurate by failing to challenge that description in his brief opposing Morrison's motion to dismiss. As a result, this Court can simply accept Morrison's characterization of the videos as containing no references to Sheriff Schmidt, but we have no issue with the Court reviewing the videos despite Plaintiff's waiver.

the "incorporation-by-reference doctrine prevents a plaintiff from avoiding dismissal by omitting facts or documents that undermine his case." *Financial Fiduciaries, LLC v. Gannett Co.*, 46 F. 4th 654, 663 (7th Cir. 2022). This precisely describes the situation before this Court, where Sheriff Schmidt is engaging in "[t]he ostrich-like tactic of pretending that potentially dispositive authority against a litigant's contention does not exist[.]" *Hill v. Norfolk and Western Ry. Co.*, 814 F.2d 1192, 1198 (7th Cir. 1987).

Fourth, Plaintiff fails to realize that in this context, where he is a public official bringing a defamation lawsuit against a citizen who criticized the "Dodge County ICE Detention Facility" but never mentioned Plaintiff's name or the office he occupied, the "of and concerning" requirement is not merely a Wisconsin common-law requirement, but is a higher threshold for public official defamation imposed by the First Amendment. As a result, Plaintiff's reliance on common-law decisions like *Schoenfeld v. Journal Co.*, 204 Wis. 132, 136, 235 N.W. 132 (1931)(Pl. Br. 7), is utterly misplaced.

Fifth, and finally, Plaintiff apparently does not realize that *New York Times v. Sullivan*, 376 U.S. 254 (1964), and *Rosenblatt v. Baer*, 383 U.S. 75 (1966) establish a rule of federal constitutional law that prohibits the inferences and arguments that he makes attempting to keep his claim against Morrison alive. Specifically, *New York Times* and *Rosenblatt* bar Sheriff Schmidt's arguments that Morrison's "accusations were understood to refer to Sheriff Schmidt because of his role as the elected official ultimately responsible for the facility where the detention purportedly occurred" (Pl. Br. 8) and that "a reasonable listener could conclude that the allegations of unlawful detention and subsequent cover-up at the Dodge County Jail referred to the official ultimately responsible for that facility, Sheriff Schmidt" (Pl. Br. 9), because in those cases the United States Supreme Court held as a matter of First Amendment that criticism of a government entity that did not mention a public official could not support an inference that the

criticism actually targeted that official. As the Court ruled in *New York Times*, "to the extent that some of the witnesses thought the [plaintiff] to have been charged with ordering or approving the conduct or otherwise having been personally involved in it, they have based this notion not on any statements in the publication, and not on any evidence that he had been so involved, but solely on the unsupported assumption that, because of his official position, he must have been." *New York Times*, 376 U.S. at 289. When the defendant's own words did not tie the plaintiff to the conduct criticized, the Court concluded, an inference like the ones L.B. Sullivan and Sheriff Schmidt want to draw "may not constitutionally be utilized to establish that an otherwise impersonal attack on governmental operations was a libel of an official responsible for those operations." *Id.* at 292.

Many other government official defamation plaintiffs have been thrown out of court by this principle. For example, the Court of Appeals of Texas summarized the holding of *New York Times* this way: "An impersonal attack criticizing the actions of a governmental agency without referring specifically to its agents, without more, will not support a claim of libel by the head of that agency." *Cox Texas Newspapers, L.P. v. Penick*, 219 S.W.3d 425, 435 (Tex. App.-Austin 2007). In *Cox*, a state prosecutor sued based on a series of articles that criticized prosecutorial and police conduct leading up to and during a murder trial that did not identify the prosecutor by name. The Court of Appeals applied *New York Times* and *Rosenblatt* and ruled that the claims could not proceed:

> Although Penick was involved in the prosecution, there is no evidence to show that readers would associate the article's criticism with him individually. Accordingly, under the standard announced in *Sullivan* and *Rosenblatt*, Penick cannot establish that the October 18 article is "of and concerning" him based solely on the fact that he supervised those specifically named or because he assumed that his status as a public figure would cause people to associate him with the article.

219 S.W.3d at 436 (cleaned up).

Similarly, in *Dean v. Deering*, 263 Va. 485, 561 S.E.2d 686 (2002), the Supreme Court of Virginia rejected a police officer's defamation claim against a mayor based on the mayor's charges of corruption and dishonesty against a police force that ranged from five to eight members, but never identified by name the specific officer who brought the suit. 561 S.E.2d at 687-88. As the Supreme Court had in *New York Times* and *Rosenblatt*, and as the Texas court would in *Cox*, the Supreme Court of Virginia affirmed the dismissal of the officer's claim because recognizing it would have been tantamount to allowing an action by a governmental entity itself: "[T]here is little question that the use of the 'small group theory,' alone as the basis for satisfying the 'of and concerning' element of a common law defamation action against a governmental actor does not survive constitutional scrutiny. An allegedly defamatory statement which imputes misconduct generally to a governmental group constitutes libel of government, for which there is no cause of action in American jurisprudence." *Id.* at 689 (cleaned up). *See also Edgartown Police Patrolmen's Ass'n v. Johnson*, 522 F. Supp. 1149, 1153 (D. Mass. 1981) (dismissing police officers' defamation complaint under *New York Times* because "plaintiffs in this case have attempted to transform impersonal criticism of the Edgartown Police Department into personal insult").

The First Amendment interests are even more important here because of the give-and-take that is expected from elected officials debating important questions of public policy with one another. As the Supreme Court recently ruled,

> In this country, we expect elected representatives to shoulder a degree of criticism about their public service from their constituents and their peers—and to continue exercising their free speech rights when the criticism comes. . . . The First Amendment surely promises an elected representative like [the plaintiff] the right to speak freely on questions of government policy. But just as surely, it cannot be used as a weapon to silence other representatives seeking to do the same.

*Houston Comm. College System v. Wilson*, 595 U.S. 468, 478 (2022) (cleaned up). This principle is even more important where Morrison—a Cook County elected official himself—did not even

mention Sheriff Schmidt by name.

The law is clear: Sheriff Schmidt's Amended Complaint rests squarely upon an inference that is prohibited by the First Amendment. This Court must therefore dismiss it with prejudice.

## II. THE COMPLAINT DOES NOT ADEQUATELY ALLEGE ACTUAL MALICE.

First, it is hard to see how Plaintiff can adequately allege that Morrison made a knowingly false statement about him when Plaintiff has not even alleged that Morrison made any statement about him. Second, Plaintiff does not allege any reason why Morrison should have known what Naqvi was telling him was not true. Does Morrison have the power to read minds? According to Plaintiff's theory, he must. But there is no factual basis provided for this assumption. Finally, as discussed in Morrison's initial brief, Plaintiff cannot substitute rhetoric and conclusory allegations that emphasize Morrison's hostility toward ICE and federal immigration efforts to transmute them into knowledge that what he said was false or that he should have known it to be false. The Amended Complaint should be dismissed.

## III. THE CONSPIRACY CLAIM FALLS ABSENT A VIABLE DEFAMATION CLAIM.

Plaintiff's arguments on the conspiracy claim fail to recognize that no conspiracy can lie for conduct that is protected by the First Amendment. *See, e.g., NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 919-920, 933-34 (1982). All of the allegations regarding Morrison seek to impose liability on him based on statements falling squarely within the protection of the First Amendment. As a result, the conspiracy claim cannot keep this case alive.

## CONCLUSION

For the reasons stated in this brief and in Morrison's initial brief, this Court should dismiss the plaintiff's complaint against Kevin Morrison. Furthermore, because plaintiff has already amended once, and there is no reason to believe that more amendments would cure the fatal defects that require dismissal, this Court should dismiss with prejudice and on the merits.

Dated this 9th day of October, 2026.

LAFFEY, LEITNER & GOODE LLC
Counsel for Defendant Kevin Morrison

*/s/ Mark M. Leitner*

Mark M. Leitner
State Bar No. 10069459
John M. O'Shea
State Bar No. 1135345
325 E. Chicago Street
Suite 200
Milwaukee, WI 53202
(414) 312-7003 (telephone)
(414) 755-7089 (facsimile)
mleitner@llgmke.com
joshea@llgmke.com